UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SETH G.,

                Plaintiff,

v.

ACTING COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

Case No. 2:23-cv-00716-TLF

ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS

Plaintiff has brought this matter for judicial review of defendant's denial of his application for supplemental security income (SSI). Dkt. 4.

The parties have consented to have this matter heard by the undersigned Magistrate Judge. 28 U.S.C. § 636(c); Federal Rule of Civil Procedure 73; Local Rule MJR 13.

I.    <u>ISSUES FOR REVIEW</u>

1. Whether the ALJ properly evaluated Plaintiff's statements about symptoms and limitations.
2. Whether the ALJ properly evaluated the written statement from Plaintiff's mother.
3. Whether the ALJ properly evaluated the opinion of Dr. Melissa Mulick.
4. Whether the ALJ's findings were accurate, applying the Special Psychiatric Review Technique.

1

## II. BACKGROUND

Plaintiff filed an application for SSI in September 2019, alleging an onset date of December 30, 2014. AR 29. Plaintiff's application was denied initially and on reconsideration. AR 28. Administrative Law Judge ("ALJ") Brian Battles held a hearing on April 26, 2021 (AR 71-121) and issued a decision on January 25, 2022 finding plaintiff not disabled. AR 28-39. Plaintiff now seeks judicial review of the ALJ's decision.

## III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of Social Security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017) (internal citations omitted). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

## IV. DISCUSSION

In this case, the ALJ found plaintiff has the following severe impairments: schizophrenia, Autism-Asperger's, attention-deficient disorder, depression, and obesity. AR 31. After evaluating plaintiff's testimony and the medical evidence, the ALJ assessed that plaintiff has the residual functional capacity ("RFC"), in relevant part, to perform medium work and is limited to unskilled work of routine, repetitive nature, and a low stress job with no more than occasional interaction with supervisors, co-workers and the general public. AR 33.

1.  Plaintiff's Statements

The ALJ's determinations regarding a claimant's statements about limitations "must be supported by specific, cogent reasons." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (citing *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990)). In assessing a plaintiff's credibility, the ALJ must determine whether plaintiff has presented objective medical evidence of an underlying impairment. If such evidence is present and there is no evidence of malingering, the ALJ can only reject plaintiff's testimony regarding the severity of their symptoms for specific, clear and convincing reasons. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citing *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). "The standard isn't whether our court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

Plaintiff contends the ALJ did not properly address his testimony about his depression. Dkt. 10 at 3-8. Plaintiff testified that his depression and his "propensity for delusional thoughts" keep him from being able to work. AR 94. Plaintiff stated that he was fired from his position as a quality control professional, analyzing construction sites, because he was having delusions "experiencing the concept of soul rape." AR 95. As plaintiff described the experience, "I would feel something in my – in – in my physical body and it would be either in my privates or my stomach. And I remember looking at the light and receiving sort of talking to myself words of rape, if you will." *Id.* The delusions happened daily, oftentimes around the period when he would eat. AR 96. He further testified that some days he is unable to get up in the morning -- as a result of depression -- and he would spend hours sleeping instead. AR 97. He stated that when

he had delusions, he would talk to himself, "fighting with myself" and that prevented him from eating or finishing a task; on any given day it was a burden to complete tasks. AR 97. He could interact with people if he went to the grocery store, or to the gym. AR 112. He had previously worked as a self-employed tutor, teaching physics to college students. AR 90-91, 110.

Other days, plaintiff explained, he tried to complete basic tasks such as cleaning or eating but was unable to because he would start to hear words and have delusions. AR 97. Plaintiff stated that the medication he takes to help him with his delusions contributes to his depression; he thought the medicines caused depression as a side effect, but he also stated that delusions would probably be significantly worse if he were to stop taking the medication. AR 98. When asked why he did not receive treatment between early 2015 and early 2019, plaintiff stated that he found it was difficult to face the truth of his disabilities, and he was homeless starting in March 2016 through July 2019 and living out of his vehicle; he obtained food from a nearby church and from family. AR 108-109. He moved into a homeless shelter (after being involuntarily committed for psychiatric treatment -- he had been stalking others and publicly masturbating, according to hospital records, AR 452-464) in August 2019. AR 109, 112. He stated that he experienced persistent lethargy, malaise, was sleeping a lot (13-15 hours on most days), and this interfered with his ability to learn new tasks, or communicate. AR 94, 97-98.

The ALJ discounted plaintiff's testimony concerning the intensity, persistence, and limiting effects of his symptoms because they were not "entirely consistent with the medical evidence and other evidence in the record." AR 34. Here, the ALJ identified

evidence indicating plaintiff exhibited both normal and abnormal mental health symptoms during the relevant period. See AR 34-36. The ALJ cited mental status examinations in which plaintiff was, among other findings, "cooperative and pleasant" and his thought process was "concrete" and "appropriate". AR 34-35. The ALJ also cited notes from plaintiff's examining providers indicating abnormal mental health findings, including observations that plaintiff exhibited an anxious mood, his judgment and insight was impaired, and plaintiff was experiencing hallucinations and delusions. AR 34-35.

The ALJ, however, overlooked the serious abnormal mental health findings and mental health symptoms specifically relating to his depression when evaluating plaintiff's subjective testimony; instead, the ALJ relied on the normal mental findings to reject plaintiff's subjective testimony. AR 24–26; see Garrison v. Colvin, 759 F.3d 1009, 1017 (9th Cir. 2014) ("Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working."). As discussed below, the medical evidence showed significant debilitating symptoms and limitations that plaintiff had experienced for many years. E.g., AR 310, 452 (confusion; inability to follow instructions); AR 498-503, 514-523, 527-531 (notes from August 7-17, 2019 regarding involuntary civil commitment -- plaintiff found gravely disabled and dangerous to others, committed for psychiatric evaluation and treatment to address behaviors such as threatening to slit his mother's throat, stalking, attempting to enter apartments illegally, and public masturbation – plaintiff was found to be disheveled, had poor hygiene, anxious, irritable, guarded, pressured speech, disorganized and distracted

cognition/thought content/thought process); AR 554-636 (notes from inpatient involuntary psychiatric treatment, August 17 - September 17, 2019, plaintiff showed poor insight, impulsivity, impaired ability to assess what is, or is not, reality, talks to himself and hears voices, delusions, hallucinations present); AR 666-673 (psychiatric notes by Dr. Gustafson from November, and December 2019, showed plaintiff was anxious; impaired judgment and insight; paranoia, delusions, hallucinations); AR 690-691, 909, 913-924 (mental health records from 2020-2021 showing depression, impaired judgment, impaired insight, excessive sleep). Therefore, the ALJ improperly found plaintiff's testimony to be inconsistent with the medical record and erred by rejecting plaintiff's subjective testimony on that basis.[1]

The ALJ's error was not harmless in this case because the ALJ failed to identify specific, clear, and convincing reasons for rejecting plaintiff's testimony that he experiences difficulty focusing and completing simple tasks due to his depression and believed the medication that helped control his schizophrenia contributed to his depression. *See Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017) (the ALJ must provide specific, clear, and convincing reasons, supported by substantial evidence, for rejecting a claimant's subjective symptom testimony).

2. Written Statement from Plaintiff's Mother

Plaintiff next asserts that the ALJ erred in discounting plaintiff's mother's lay witness written statements. For cases filed after March 27, 2017, such as this one, an ALJ is "not required to articulate" how they evaluated evidence from non-medical sources such

---

[1] Plaintiff also argues plaintiff presented evidence to the Appeals Council that he had blood clots in 2021 because of being in bed for excessive time. The Court declines to address this issue because the case is being reversed and remanded for a new hearing. On remand, the evidence presented to the Appeals Council would be considered by the Commissioner in a new hearing.

as educational personnel, public and private social welfare agency personnel, and other lay witnesses. 20 C.F.R. § 404.1502(e). Yet, the Ninth Circuit has suggested that its pre-2017 standard requiring "germane" reasons to reject lay witness testimony applies to an ALJ's evaluation of lay witness testimony post-2017. *Muntz v. Kijakazi*, No. 22-35174, 2022 WL 17484332, at * 2 (9th Cir. Dec. 7, 2022) (applying "germane reasons" standard to ALJ's evaluation of third-party function report from claimant's husband).

Plaintiff's mother testified that plaintiff "lies in bed every day for almost every hour of each day," and has to be told to shower "or to do his other activities of daily living." AR 416. She stated that he lives "like a hollowed out ghost of a person," "his sense of humor was taken from him," and does not think that her son would be able to "manage his nutrition, keep himself and his environment clean, or interact with the public in ways that are 'normal'." AR 416.

The ALJ erred as a matter of law when rejected plaintiff's mother's statements for being "inconsistent with the evidence in the record." AR 36. Although plaintiff's medical records did show that plaintiff's *anxiety* improved with Strattera, and his mental status examinations from March 20, 2020 and January 7, 2021, reflected that plaintiff's attitude was "pleasant," his "social contact was interactive", and his "attention was grossly intact", this is not a germane reason to reject his mother's testimony regarding plaintiff's symptoms regarding his *depression* and how plaintiff's depression continuously affects him and his ability to take care of himself. *See* AR 692-93; 916-17.

3. Opinion of Dr. Melissa Mulick

Next, Plaintiff contends that the ALJ erred in finding Dr. Melissa Mulick's opinion (dated October 4, 2019) unpersuasive. Dr. Mulick opined that overall, plaintiff's mental

health limitations severity rating was "marked". AR 641. Plaintiff had a severe limitation in ability to complete a normal workday or workweek without interruptions from psychologically based symptoms. AR 641. She found plaintiff had marked limitations in his ability to:

    (1) understand, remember, and persist in tasks by following short, simple directions, or detailed instructions;

    (2) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision;

    (3) learn new tasks;

    (4) adapt to changes in a routing work setting;

    (5) make simple work-related decisions;

    (6) communicate and perform effectively in a work setting;

    (7) maintain appropriate behavior in a work setting;

AR 641.

    Dr. Mulick noted that plaintiff had an "unwashed" appearance, an abnormal mood and affect – mental fog -- abnormal thought process and content, and abnormal perceptions. AR 642.

    The ALJ found the doctor's assessment of marked limitations to be "excessive" in comparison to the other evidence supporting less restrictive limitations, including mental status examinations showing plaintiff's mood was euthymic, his attitude was pleasant, his affect was full range, and his anxiety was improving with Strattera. AR 36; 692-93; 916-17.

Under the 2017 regulations, the Commissioner "will not defer or give any specific evidentiary weight . . . to any medical opinion(s) . . . including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The ALJ must nonetheless explain with specificity how he or she considered the factors of supportability and consistency in evaluating the medical opinions. 20 C.F.R. §§ 404.1520c(a)–(b), 416.920c(a)–(b).

In *Woods v. Kijakazi*, 32 F.4th 785 (9th Cir. 2022), the Court found that "the requirement that ALJ's provide 'specific and legitimate reasons'[2] for rejecting a treating or examining doctor's opinion…is incompatible with the revised regulations" because requiring ALJ's to give a "more robust explanation when discrediting evidence from certain sources necessarily favors the evidence from those sources."  *Id.* at 6792. Under these regulations,

> an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. The agency must "articulate ... how persuasive" it finds "all of the medical opinions" from each doctor or other source, 20 C.F.R. § 404.1520c(b), and "explain how [it] considered the supportability and consistency factors" in reaching these findings, *id.* § 404.1520c(b)(2).

*Id.*

Similar to the ALJ's evaluation of plaintiff's statements about symptoms and limitations, the ALJ failed to consider evidence in the record indicating abnormal mental health findings and plaintiff's varying symptoms when evaluating the consistency and persuasiveness of Dr. Mulick's opinion of plaintiff's marked limitations. The ALJ "cannot

---

[2] *See Murray v. Heckler,* 722 F.2d 499, 501 (9th Cir. 1983) (describing the standard of "specific and legitimate reasons").

9

simply pick out a few isolated instances" of medical health that support his conclusion but must consider those instances in the broader context "with an understanding of the patient's overall well-being and the nature of her symptoms." *Attmore v. Colvin*, 827 F.3d 872, 877 (9th Cir. 2016). For example, the ALJ did not consider plaintiff's mental status exams from November 20, 2019 and December 27, 2019, which revealed that plaintiff was anxious and his judgment and insight were impaired. AR 667; 669. Plaintiff was also struggling with insomnia. AR 669.

Defendant concedes that the ALJ's discussion of Dr. Mulick's opinion did not comply with the regulatory requirements, but defendant argues that the error was harmless because Dr. Mulick opined that plaintiff's limitations would last at the level she opined for nine more months with treatment. Dkt. 18 at 11. To be eligible for disability benefits, an individual must show that he suffers from one or more impairments that has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(a).

An error that is inconsequential to the non-disability determination is harmless. *Stout v. v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006). The ALJ here did not consider Dr. Mulick's opinion on the duration of plaintiff's limitations in his decision. Nonetheless, even if the Court were to assume, for purposes of analysis, that the ALJ did consider this portion of Dr. Mulick's opinion and found it unpersuasive on that ground, it would have been an error. Although Dr. Mulick opined that plaintiff's limitations would last at those levels for nine more months, Dr. Mulick did not include time before this evaluation -- when plaintiff was experiencing debilitating symptoms; there were medical records of his involuntary psychiatric hospitalization starting in early

August 2019 (several weeks prior to Dr. Mulick's October 4, 2019 evaluation). AR 404, 535.

    4.  Special Psychiatric Review Technique

Finally, plaintiff contends the ALJ's findings were not supported by substantial evidence when he conducted his analysis of the 'Paragraph B' criteria for evaluation of mental health impairments.

The Social Security Regulations set forth a specific procedure for evaluating mental impairments. 20 C.F.R. § 404.1520a(a). This procedure applies "at each level in the administrative review process," including the ALJ's written decision issued after a hearing. *See id.* According to this procedure, the ALJ first must determine whether or not a medically-determinable mental impairment exists by evaluating the relevant symptoms, signs and laboratory findings. 20 C.F.R. § 404.1520a(b)(1); *see also* 20 C.F.R. §§ 404.1508, 404.1528.

Once it is determined a mental impairment exists, the ALJ "must rate the degree of functional limitation resulting from the impairment(s)." 20 C.F.R. § 404.1520a(b)(2). The ALJ must also rate the degree of functional limitation in activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3). The regulations require the ALJ rate the degree of functional limitation in the four areas described above. *Id.* As quoted by the Ninth Circuit, the ALJ's written decision " '*must* incorporate the pertinent findings and conclusions based on the technique,' and '*must* include a specific finding as to the degree of limitation in each of the functional areas.' " *Keyser v. Commissioner of Social Security*, 648, F.3d 721, 725

(9th Cir. 2011) (quoting 20 C.F.R. § 404.1520a(e)(4)) (emphasis added by Ninth Circuit) (other citation omitted).

If the ALJ rates the degree of a claimant's limitation as "none" or "mild", the ALJ will generally conclude the claimant's impairment(s) is not severe, "unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." *See* 20 C.F.R. § 404.1520(d)(1). An impairment or combination of impairments "can be found 'not severe' only if the evidence establishes a slight abnormality having 'no more than a minimal effect on an individual[']s ability to work.' " *Smolen v. Chatter*, 80 F.3d 1273, 1290 (9th Cir. 1996) (quoting *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988) (adopting Social Security Ruling ("SSR") 85-28)).

The ALJ in this case found that plaintiff had a moderate degree of limitation in each of the four broad areas of functioning: (1) understanding, remembering or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. AR 31-32. Plaintiff challenges the ALJ's findings with respect to the first, second, and fourth area of functioning.

First, the ALJ's determination that plaintiff had only moderate limitations in the area of understanding, remembering, or applying information is not supported by substantial evidence. The ALJ came to his conclusion by noting that although there were records that revealed plaintiff was unable to respond to directions and appeared confused (AR 310, 452), plaintiff answered all questions asked during a mental status examination (AR 860). The ALJ did not consider medical records stating that plaintiff's insight into his mental illness was impaired. AR 536, 914. The ALJ further did not consider notes from

September, October, and November 2019, indicating that plaintiff's judgment was "impaired" (AR 547; 670) or "poor" (AR 664) and his ability to assess what is reality, or is not reality, was impaired (AR 554, 559). The ALJ did not mention these instances to explain how they fit in with his ultimate conclusion of moderate limitation.

Second, the ALJ erred in concluding that plaintiff only had moderate limitation in the functional area of interacting with others. The ALJ refers to plaintiff's statement that he gets along with authority figures well, goes to the gym and grocery store regularly, and can drive on his own. AR 32. Plaintiff, on the other hand, also stated that he sometimes does not talk to someone he really wants to talk to out of fear, which limits his opportunities (AR 639), he does not spend time with others (AR 309), and he was fired from his job as a tutor for failing to listen to the students (AR 311). The ALJ did not explain how going to the gym and grocery store or being able to drive equates to plaintiff being able to interact with others in a work setting for a full eight-hour day and five days per week, in light of the medical evidence and plaintiff's other statements in the record.

Finally, in the area of adapting or managing oneself, the ALJ states that plaintiff reported that while he bathes and cares for his hair infrequently due to his depression and sleeps often, he also does not need any special reminders to take care of personal needs or to take his medications and can prepare his own meals. AR 32. However, plaintiff also states that "people check in with" him before he goes to the store (AR 307), he eats only once a day (AR 307), and his depression makes completing tasks challenging for him (AR 310). It does not appear as though the ALJ considered all of

these instances to explain why he concluded that plaintiff's limitation in this area of functioning was only moderate.

The ALJ should conduct a new analysis of the 'Paragraph B' criteria for evaluation of plaintiff's mental health impairments.

## CONCLUSION

Based on the foregoing discussion, the Court concludes the ALJ harmfully erred when deciding that plaintiff's limitations did not meet the relevant criteria and therefore was not disabled. Therefore, the ALJ's decision is reversed and remanded for further administrative proceedings.

When plaintiff initially filed his application on September 11, 2019, he alleged disability beginning February 14, 2016. However, as acknowledged by the ALJ, plaintiff amended his alleged onset date of disability to December 30, 2014. AR 215.

The onset date of a disability can be critical to an individual's application for disability benefits, and in this case, it is unclear to the Court if the ALJ relied on plaintiff's amended onset date of disability when conducting his analysis of plaintiff's subjective symptoms, the medical evidence, and the "Paragraph B" evaluation.

While plaintiff did not submit medical records explicitly from 2014, the records submitted do indicate that his symptoms may have persisted since then. For example, plaintiff states he had professional psychiatric help for depression between the ages of 14 and 24. AR 454. In circumstances where the ALJ must determine the date of disability onset and medical evidence from the relevant time period is unavailable or inadequate, Social Security Ruling ("SSR") 83-20 states that the ALJ should call a medical advisor. *See Diedrich v. Berryhill,* 874 F,3d 634, 638 (9th Cir. 2017); *see also Armstrong v. Comm'r of Soc. Sec. Admin.,* 160 F.3d 587, 590 (9th Cir. 1998) (Relying

on SSR 83-20, we have held that where a record is lacking and ambiguous as to the onset date of disability, "the ALJ must call a medical expert to assist in determining the onset date."); *DeLorme v. Sullivan,* 924 F.2d 841, 848 (9th Cir. 1991) ("In the event that the medical evidence is not definite concerning the onset date and medical inferences need to be made, SSR 83-20 requires the administrative law judge to call upon the services of a medical advisor and to obtain all evidence which is available to make the determination.").

If adequate medical records were, and on remand are not available, and the record is ambiguous as to when plaintiff's onset date when impairments became disabling, on remand the Commissioner should follow *DeLorme v. Sullivan,* and related Ninth Circuit precedent, and have information from a medical expert to help determine the onset date.

The Commissioner is directed to conduct a de novo hearing and to allow plaintiff to present new evidence. The Commissioner is directed to review the medical evidence, consider new analysis of the 'Paragraph B' criteria for evaluation of plaintiff's mental health impairments, determine the onset date of plaintiff's disability, and consider plaintiff's statements in light of the full record of plaintiff's mental health conditions, medication side effects, symptoms and limitations.

Dated this 25th day of March, 2024.

Theresa L. Fricke
United States Magistrate Judge

15